STATE of Iowa, Appellant,

v.

Rose Marie LIPCAMON, Appellee.

No. 91–596.

Supreme Court of Iowa.

April 15, 1992.

Bonnie J. Campbell, Atty. Gen., Amy M. Anderson, Asst. Atty. Gen., and Theresa Seeberger, County Atty., for appellant.

Linda Del Gallo, State Appellate Defender, and Ahmet S. Gonlubol, Asst. State Appellate Defender, for appellee.

Considered by McGIVERIN, C.J., and SCHULTZ, CARTER, LAVORATO and ANDREASEN, JJ.

SCHULTZ, Justice.

We must decide whether the trial court erred by failing to hold a party in contempt of court for violating a no contact order issued after the party was charged with domestic abuse assault. The trial court stated that defendant Rose Marie Lipca-

mon made contacts with her husband John, but "the contacts were such that they were not so egregious or unreasonable that a finding of contempt beyond a reasonable doubt is warranted." The State sought and we granted further review of this ruling. We affirm.

On January 28, 1991, defendant was charged with domestic abuse assault pursuant to Iowa Code sections 708.1(1)–(2), 708.-2(3), and 236.12.[1] Defendant was accused of cutting her husband with a butcher knife. On February 8, the magistrate signed an order prohibiting defendant from having contact with or harassing her husband by telephone or in person while the charges were pending. The order further provided that defendant "may send her agent to retrieve her personal possessions ... including her diabetes medication."

Defendant moved into her son's mobile home which was located 400 feet from her husband's home. On March 9, defendant knocked on her husband's door asking for her son's girlfriend because defendant claimed she had locked herself out of her son's mobile home. Later the same day, she returned to receive medications that were delivered to her husband's home. Also on that day, she called her husband on the telephone requesting use of a family automobile. The next day defendant knocked on her husband's door. She began crying and her husband invited her in. She delivered a letter from her attorney concerning their divorce settlement. An argument with her son ensued. She was asked to leave and she complied. Four hours later, after another son informed the husband that defendant was giving his brother trouble, the husband reported her contacts to the sheriff's department. The State then commenced a contempt proceeding against defendant.

The State claims the trial court failed to apply the facts to the law as prescribed in Iowa Code chapter 236. Defendant responds by claiming (1) the State had no right to direct appeal; (2) the State had not met its burden of proof to show willfulness; and (3) even if we hold the trial court

erred, this court cannot remand the case for a determination of contempt because this would violate the Double Jeopardy Clause of the United States Constitution.

I. We first examine the State's right to appeal. The State sought and we granted discretionary review of the order dismissing the contempt citation. Defendant challenges the remedy the State seeks on appellate review.

■ When an application for contempt is dismissed, a direct appeal is permitted. *Patterson v. Keleher*, 365 N.W.2d 22, 24 (Iowa 1985); *State v. District Court*, 231 N.W.2d 1, 4 (Iowa 1975); *In re Guardianship & Conservatorship of Cerven*, 334 N.W.2d 337, 339 (Iowa App.1983). The fact that the State requested discretionary review is not a fatal error. If an appellate court is of the opinion that another remedy is appropriate, the case shall proceed as though the proper form of relief was requested. Iowa R.App.P. 304.

■ II. Our cases impose a special standard of review of the facts in contempt cases. If it is claimed that a ruling is not supported by substantial evidence, "we examine the evidence, not de novo, but to assure ourselves that proper proof supports the judgment." *Palmer College of Chiropractic v. District Court*, 412 N.W.2d 617, 619 (Iowa 1987); *Patterson*, 365 N.W.2d at 24; *Watson v. Charlton*, 243 Iowa 80, 92, 50 N.W.2d 605, 612 (1951). "The exact extent to which we may go in deciding questions of fact from the record is vaguely defined; it lies in a shadowland, a 'twilight zone', whose boundaries do not admit of definite charting." *Watson*, 243 Iowa at 92, 50 N.W.2d at 612 (citations omitted). The finding of contempt must be established by proof beyond a reasonable doubt. *Phillips v. Iowa Dist. Court*, 380 N.W.2d 706, 709 (Iowa 1986).

■ Our review of the trial court's conclusions of law follows traditional lines. We are not bound by the trial court's conclusions of law and may inquire into whether it applied erroneous rules of law that

---

1. All statutory references in this opinion are to the 1991 Iowa Code.

materially affected its decision. *Patterson*, 365 N.W.2d at 24.

III. We now turn to the State's claim of error. It took a shotgun approach, claiming the trial court failed in its adjudicatory function of applying the facts to the existing law. The State quarrelled with the trial court's conclusions of law and its findings of fact.

We first examine the legal or statutory basis for this contempt hearing. Authority for this contempt action is found in Iowa Code chapters 236 and 665. Chapter 236, the Domestic Abuse Act, addresses assault between family or household members who reside together at the time of the assault. Iowa Code § 236.2(2)(a). As in this case, the magistrate may order the arrested person, at the time of the initial appearance, to have no contact with the alleged victim. *Id.* § 236.14(2). The obvious purpose of such an order is to protect the victim from harm or harassment.

To facilitate enforcement of a domestic abuse order, the legislature provided that "[t]he court may hold a party in contempt ... for violation of any order that establishes conditions of release or is a protective order...." *Id.* § 236.8. The procedural and penalty framework for contempt is provided in chapter 665. Section 236.8 falls within the confines of chapter 665 as an "act or omission specially declared a contempt by law." *Id.* § 665.2(6).

■ Proof of contempt requires a showing that the defendant willfully violated the no contact order. Even though section 236.8 does not mention willfulness, we have always held that a finding of contempt for a violation of a court order or an injunction must be willful. *Palmer College*, 412 N.W.2d at 621; *Lutz v. Darbyshire*, 297 N.W.2d 349, 353 (Iowa 1980); *Critelli v. Tidrick*, 244 Iowa 462, 472, 56 N.W.2d 159, 164 (1952); *Dunham v. State*, 6 Iowa 245, 255 (1858). In *Lutz* we stated:

> In this context a finding of disobedience pursued "willfully" requires evidence of conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unautho-

rized, coupled with an unconcern whether the contemner had the right or not. 297 N.W.2d at 353.

IV. In light of these principles, we now turn to the trial court's determination of facts. The trial court found that there had been contact with the husband contrary to the order of release. Although the trial court did not specifically address the issue of willfulness, it found that these contacts were not so egregious or unreasonable that a finding of contempt beyond a reasonable doubt was warranted. The court emphasized the parties' unique living arrangements, their mental and physical conditions, defendant's lack of transportation, the husband's acquiescence to the contacts, the necessity of medication for defendant, and the urgency created by their attorneys' actions and correspondence. Based on these circumstances, the court concluded that the contacts were minimal, had no detrimental consequences, and did not rise to the level of contempt.

■ The State argues that if the trial court found the elements of contempt, it must hold defendant in contempt. The State contends the trial court has no discretion in its determination of contempt. We disagree. In the absence of statutory regulation, we have long held the general rule to be that decisions regarding contempts are within the sound discretion of the trial court, and unless this discretion is grossly abused, the decision must stand. *Carr v. District Court*, 147 Iowa 663, 673–74, 126 N.W. 791, 795 (1910). We have held to the contrary in a contempt action involving violation of an injunction to sell liquor under a statute which provides that "any violation of the provisions of this statute ... *shall* be punished as a contempt...." *Barber v. Brennan*, 140 Iowa 678, 681, 119 N.W. 142, 143 (1909) (emphasis added). However, in this case section 236.8 provides that the "court *may* hold a party in contempt for a violation of an order...." (emphasis added). Under the terms of section 236.8, we believe that the trial court is granted broad discretion.

■ The State further argues that the trial court legislated a no-harm, no-foul

rule. We disagree. We believe the trial court's recognition of the circumstances of defendant's mental condition, her lack of transportation, her need for medication, and the husband's acquiescence to the contacts, may properly be considered in determining whether defendant acted willfully.

We believe the record justifies the trial court's ruling. In this case, defendant called her husband because he had the parties' vehicles and she needed transportation. In addition, her husband had her medication and when he saw her coming down the road he took her medicine and met her in the lane to his home. Later, he invited her into his home to discuss her lawyer's letter concerning the division of property arising out of their marital breakup. The husband's acquiescence and participation in these contacts is not a defense that defendant may urge; however, it may be considered in determining whether defendant acted willfully.

The provisions for holding a person in contempt for violating a no contact order are intended to protect family members. It is noteworthy that defendant's husband did not promptly report these contacts to the authorities. Rather, he reported the contacts when defendant began having trouble with their son, and her husband and son wanted her out of the son's mobile home where she was living. It is obvious that the husband's reporting of the contacts was not for the purpose of protecting family members. Under these circumstances, we believe the trial court could have determined that it had not been proven beyond a reasonable doubt that defendant's acts were intentional and deliberate as defined in *Lutz.* 297 N.W.2d at 353. We believe this was a very close case. However, the trial court was in a position to observe the parties; thus, we grant deference to its findings and conclusions.

Under this decision, we need not address the constitutional double jeopardy issue.

AFFIRMED.