**IN THE COURT OF APPEALS OF IOWA**

No. 14-0410
Filed December 24, 2014


**IN RE THE MARRIAGE OF KATHLEEN SHAMAN
AND JAMES SHAMAN**

**Upon the Petition of
KATHLEEN SHAMAN n/k/a
KATHLEEN MCDANIEL SHAMAN,**
        Petitioner-Appellee,

**And Concerning
JAMES SHAMAN,**
        Respondent-Appellant.
_____


        Appeal from the Iowa District Court for Cerro Gordo County, Gregg R.

Rosenbladt, Judge.


        James Shaman appeals from the district court's denial of his application

requesting that the court hold Kathleen Shaman in contempt.  **AFFIRMED IN**

**PART AND REVERSED IN PART.**


        Judith O'Donohoe of Elwood, O'Donohoe, Braun, White, L.L.P., Charles

City, for appellant.

        Kristy B. Arzberger of Arzberger Law Office, Mason City, for appellee.


        Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**POTTERFIELD, J.**

James Shaman appeals from the district court's denial of his application requesting that the court hold Kathleen Shaman in contempt.

### I. Factual and Procedural Background

The parties' marriage was dissolved by the district court's decree on October 14, 2013. The decree adopted and incorporated the parties' stipulation, which provided in part:

> The parties own real estate with a street address of 936 North Pennsylvania Avenue, Mason City. The parties have agreed to list the home for sale with realtor Joe Chodur for an initial asking price of $85,000. Pending sale, Kathy will be entitled to reside in the home during which time Kathy will pay the first mortgage . . . . Pending sale, James shall pay the 2nd mortgage on the home.

After the court's decree, James pressured Kathleen to work directly with Chodur to have the house listed for sale online. Kathleen arranged a meeting with Chodur, which took place on November 21, 2013. The meeting was a preliminary one in which Chodur looked at the residence to evaluate its ideal listing price. While at the residence, Chodur explained to Kathleen that the house was not sufficiently presentable for him to take photographs to accompany the listing. Kathleen told him she would continue to work on the house and contact him when it was ready to be photographed. She did not commit to a timeframe but told Chodur that she might be ready in about two weeks.

By December 19, 2013, no listing agreement had been signed, and the home was not on the market. On December 26, 2013, James filed an application asking the district court to find Kathleen in contempt for failing to comply with the court's order—i.e. the incorporation of the stipulation into the court's order. The

district court conducted a hearing on the application on February 10, 2014. At the hearing, it came to light between the parties that James had communicated to Kathleen, through counsel, that Chodur believed she was combative during their November meeting. Both Kathleen and Chodur denied any ill will, and both believed the meeting was civil.

The application was dismissed, and James was ordered to pay Kathleen's attorney fees resulting from the application. James appeals the dismissal, the award of attorney fees, and the amount of fees awarded.

## II. Standard and Scope of Review

A trial court has broad discretion to refuse to hold a party in contempt. *In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995); *see* Iowa Code § 598.23 (2013) (providing a person who willfully disobeys a court order "*may* be cited and punished" (emphasis added)). "[A] trial court is not required to hold a party in contempt even though the elements of contempt may exist." *Id.* "[U]nless this discretion is grossly abused, the [trial court's] decision must stand." *Id.* (citing *State v. Lipcamon*, 483 N.W.2d 605, 606 (Iowa 1992)). We therefore review the dismissal of a contempt application for an abuse of discretion. Likewise, "[w]e review a district court's decision on attorney fees for abuse of discretion." *In re Marriage of Michael*, 839 N.W.2d 630, 635 (Iowa 2013).

## III. Discussion

*A. Contempt.* On his contempt application, James "has the burden of proving that [Kathleen] (1) had a duty to obey a court order, and (2) willfully failed to perform that duty." *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998). As to the first burden, there is no dispute that Kathleen must comply with

the terms of the stipulation as incorporated into the court's order. However, James has presented no evidence that Kathleen has willfully failed to do so.

For James to prove Kathleen willfully disobeyed a court order, he needs to show "evidence of conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not." *Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). He asserts Kathleen's behavior satisfies this standard because she failed to "put her house in order for photographs, contact the realtor with respect to it and then sign a listing agreement" by December 19, 2013.

The court order vis a vis the parties stipulation does not set a deadline by which the house must be listed for sale. Instead, James argues Kathleen was required to complete her duties "within a reasonable time."[1] However, he offers no support for his claim that the days between the court's order and the filing of his application on December 26 falls outside the bounds of a reasonable time for performance.

The district court declined to find Kathleen in contempt because the absence of a deadline in the stipulation permits her a reasonable time to comply, she had "taken measures to list the property" by cleaning the home and meeting Chodur, and the record shows "a good faith effort on the part of [Kathleen] and her attorney to resolve this disagreement." We agree on all accounts. The

---

[1] To support his proposition, James cites to *In re Marriage of Lawson* 409 N.W.2d 181, 182 (Iowa 1987) ("[A] decree is to be construed like any other written instrument."), and *Fausel v. JRJ Enterprises, Inc.*, 603 N.W.2d 612, 619 (Iowa 1999) ("When a contract fails to specify time for performance, the parties must perform within a reasonable time.").

district court did not grossly abuse its discretion by dismissing James's application.

*B. Attorney Fees.* James argues the district court was without authority to award attorney fees to Kathleen. Though district courts have considerable discretion in awarding attorney fees, the power to do so "must come clearly within the terms of [a] statute or agreement." *Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 182 (Iowa 2010). James asserts Iowa Code section 598.24 only permits the district court to award damages to an *applicant* who prevails on a contempt application.[2]

Indeed, this court has previously noted section 598.24 does not permit courts to award attorney fees to a party defending against a contempt action.[3] Neither is there statutory authority permitting us to award appellate attorney fees in such a case.

We must therefore reverse the district court's award of attorney fees and deny Kathleen's present request for appellate attorney fees. Each party bears the cost of its own attorney. However, given the merit of the contempt application and appeal, we exercise our own discretion to tax the costs of appeal to James.

**AFFIRMED IN PART AND REVERSED IN PART.**

---

[2] "When an action for . . . contempt . . . is brought on the grounds that a party . . . is in . . . contempt of the decree, and the court determines that the party is in . . . contempt of the decree, the costs of the proceeding, including reasonable attorney's fees, may be taxed against that party." Iowa Code § 598.24.

[3] *See, e.g.*, *In re Marriage of Whiteside*, No. 07-0739, 2007 WL 3376902, at *3–4 (Iowa Ct. App. 2007) ("The statute does not authorize taxing the other party's attorney fees against the party seeking the contempt finding. Thus, there was no statutory authority for the attorney fees ordered by the district court here."). *Whiteside* is not controlling law, but its reasoning is applicable in the case before us.