# IN THE COURT OF APPEALS OF IOWA

No. 16-1000
Filed October 11, 2017

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**MICHAEL JOHN MAJERUS,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

A defendant appeals his convictions and sentences for burglary in the second degree and stalking in violation of a protective order. **AFFIRMED**.

Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kyle P. Hanson, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

Michael Majerus appeals his convictions and sentences for second degree burglary, in violation of Iowa Code sections 713.1 and 713.5 (2015), and stalking in violation of a protective order, in violation of Iowa Code sections 708.11(2) and 708.11(3)(b)(1). He claims the prosecutor improperly obtained a presentence investigation report (PSI) from a prior case in which Majerus was convicted of assaulting the same victim as in this case. Majerus argues the district court erred in allowing into evidence derivative evidence of the prior PSI. He claims his conviction for stalking should be vacated on the ground of issue preclusion. He claims the district court erred in not granting his request for a spoliation instruction. He also claims a statutory surcharge was illegally imposed.

I.

Majerus has spent much of his life in and out of placements. He is a borderline-functioning adult with a self-reported history of violence and sex abuse, both as a victim and perpetrator. In 2011, Majerus was placed at the Woodward Resource Center for programming. There he met Megan Hill, the treatment program manager. Majerus developed an obsession with Hill. He openly expressed and documented both his desire to harm Hill and his sexual fantasies involving Hill. In 2013, Majerus acted on his impulses and punched Hill in the face, breaking her nose and orbital bone. Majerus pleaded guilty to assault with intent to inflict serious injury. The district court sentenced Majerus to prison and issued a sentencing no-contact order.

The conduct at issue in this proceeding arose after Majerus was released from prison in August 2014. Upon his release, Majerus moved to Des Moines.

From the fall of 2014 until the fall of 2015, Hill reported to the police several encounters with Majerus, but the police informed her there was little they could do.

In November 2015, Hill went out for drinks with friends after work. She arrived home at approximately 1:45 a.m. accompanied by a friend. Several days later, Hill discovered a basement window in her home had been broken out and a table was pushed under a window, allowing a person to access and climb out the window. Hill took photos of the window, but she deleted them at some point. It is unclear when she deleted the photos. Hill's discovery of the broken window caused her to review video captured by her home surveillance system. The record reflects the video from the night Hill went out with friends showed a man approaching the front door of Hill's home. The man tried to open the door, peered inside, looked under the doormat, and briefly disappeared from view. The man reappeared at the door and then walked out of view. The record reflects the sound of breaking glass followed by footsteps can be heard on the recording. The headlights to Hill's car appear on the video when she returns home at 1:45 a.m.

After reviewing the security footage, Hill contacted the police. She provided the investigating detective with two pieces of video from her surveillance system. One piece of footage showed the man approaching her home and the sound of breaking glass. The second contained footage from the time Hill arrived at her home that night. Hill identified the man in the security footage as Majerus. At trial, others identified the man on the film as Majerus. The pieces of surveillance video were clips edited from longer pieces of footage.

Hill provided the pieces of video because they showed relevant activity and because her security system had limited storage capacity and automatically deleted footage after seven days. Hill did not provide the photos of the broken window to the police. She assumed the police took photos.

Pursuant to Iowa Code section 664A.7(1), the State sought to hold Majerus in contempt for violating the sentencing no-contact order issued in 2013. The summary contempt hearing was held on December 7, 2105. The district court dismissed the application because the prosecutor failed to offer into evidence the no-contact order. Specifically, the district court stated, "[T]he Court finds that there has not been evidence established beyond a reasonable doubt that the defendant violated the No-Contact Order, as alleged in the affidavit, because the Court has no idea what's in the No-Contact Order."

In addition to the contempt proceeding, the State also filed felony criminal charges against Majerus. The amended trial information charged Majerus with burglary in the second degree arising out of the entry into Hill's home and stalking in violation of a protective order arising out of conduct from 2011 until November of 2015.

A discovery issue relevant to this appeal arose prior to trial. In March 2016, the State notified Majerus it had obtained a copy of the PSI prepared in connection with the 2013 case. How the prosecutor came to be in possession of the 2013 PSI is not in dispute. The prior case involving Majerus and Hill was prosecuted by Assistant Boone County Attorney Kailyn Heston. At some point after the 2013 case was closed, Heston became employed by the Polk County Attorney's Office. Heston was assigned to prosecute this case involving Majerus.

Heston requested from the Boone County Attorney's Office a copy of Heston's file from the prior prosecution. Included in the file was a copy of the 2013 PSI.

The State filed a motion to disclose the 2013 PSI to the defense. The motion provided the State intended on using information in the file, including the PSI. The State acknowledged Iowa Code section 901.4 provides that a PSI is confidential and requested a court order allowing the State to provide a copy of the PSI to Majerus as part of its required disclosure.[1] Marjerus resisted the motion to disclose, contending use of information obtained from the PSI would violate Iowa Code section 901.4. The court granted the motion, ordering the PSI be disclosed to the defendant.

During trial, the prosecutor never offered into evidence the 2013 PSI. However, the prosecutor did call the writer of the psychosexual evaluation

---

[1] Iowa Code section 901.4 states in pertinent part:

> The presentence investigation report is confidential and the court shall provide safeguards to ensure its confidentiality, including but not limited to sealing the report, which may be opened only by further court order. The defendant's attorney and the attorney for the state shall have access to the presentence investigation report at least three days prior to the date set for sentencing. The defendant's appellate attorney and the appellate attorney for the state shall have access to the presentence investigation report upon request and without the necessity of a court order. The report shall remain confidential except upon court order. However, the court may conceal the identity of the person who provided confidential information. The report of a medical examination or psychological or psychiatric evaluation shall be made available to the attorney for the state and to the defendant upon request. The reports are part of the record but shall be sealed and opened only on order of the court.

contained in the PSI, Dr. James Varland, to testify regarding certain issues. Dr. Varland testified about statements Majerus made regarding Hill.

The jury found Majerus guilty of both counts. The district court sentenced Majerus to fifteen years' incarceration. Majerus was ordered to pay a one hundred dollar surcharge related to his stalking conviction pursuant to Iowa Code section 911.2B(1). Majerus filed this timely appeal.

## II.

## A.

Majerus's first claim on appeal is convoluted. Iowa Code section 901.4 provides a PSI is confidential. Majerus argues section 901.4 limits a prosecutor's access to a PSI. Specifically, the prosecutor only has access to the PSI on pending cases for the purposes of sentencing. He argues prosecutor Heston obtained a copy of the 2013 PSI in violation of the statute. He contends the remedy for violating the statute is the suppression of illegally obtained evidence. He acknowledges the PSI was not offered or admitted into evidence at trial. He argues, however, any information contained in the PSI or derived from use of the PSI should also be suppressed. Dr. James Varland prepared the psychosexual evaluation contained in the PSI. Dr. Varland was called to testify about statements Majerus made regarding Hill during Dr. Varland's interview with Majerus. Majerus contends the district court should have precluded Dr. Varland's testimony in its entirety because the "testimony was based entirely on his interview of Majerus for the purposes of preparing the presentence report's psychosexual evaluation" and the "testimony was likewise confidential." Majerus contends the failure to exclude the evidence requires a new trial.

At first glance, there are numerous problems in Majerus's house-that-jack-built claim. Section 901.4 relates only to the confidentiality of a PSI and not testimony of persons involved in preparing a PSI. Further, section 901.4 provides a PSI report shall remain confidential "except upon court order." Here, there was a court order approving disclosure of the PSI. In addition, there is no indication the remedy for violating section 901.4 is or should be the suppression of evidence. There is also no indication any such remedy would or should extend to derivative evidence. There is nothing establishing that Dr. Varland's testimony was derivative evidence within the meaning of our caselaw. *See State v. Lane*, 726 N.W.2d 371, 380 (Iowa 2007) (discussing derivative evidence). In other words, there is nothing showing prosecutor Helton exploited the purported illegality to learn of Dr. Varland. It is equally plausible prosecutor Helton had independent knowledge of Dr. Varland based on her recollection of the prior case or based on her experience as a prosecutor in a county in which Dr. Varland conducted all of the psychosexual evaluations for sentencing purposes. Finally, even if suppression of Dr. Varland's testimony were required, there is no showing a new trial was warranted.

Despite the apparent shortcomings of the claim, we need not resolve the claim on the merits because it has not been preserved for appellate review. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). At the hearing on the motion to disclose, the only issue was whether "the PSI needs to be disclosed to the defense, not whether the contents would be admissible in trial." The district

court explicitly stated the only issue it was addressing was whether the State needed to disclose the PSI to the defendant to comply "with all the discovery rules." The district court further stated, "Again, whether it is admissible evidence, that's something that needs to be addressed separately and probably with your trial judge." At trial, Majerus never sought to exclude Dr. Varland's testimony on the ground the testimony was derivative evidence or on the ground section 901.4 otherwise prohibited the testimony. Majerus sought to exclude Dr. Varland's testimony on the ground the testimony would violate the physician-patient privilege as protected in Iowa Code section 622.10.

Majerus concedes in his brief that this objection to Dr. Varland's testimony was not raised, but he argues this court should address the issue as a claim of ineffective assistance of counsel. *See State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006) (stating the claim of ineffective assistance of counsel is an exception to the general rule of error preservation). A claim of ineffective assistance of counsel "need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes." Iowa Code § 814.7(1). When such a claim is presented on direct appeal, however, the "court may decide the record is adequate to decide the claim or may choose to preserve the claim for determination under chapter 822." Iowa Code § 814.7(3).

We conclude the record is not adequate to resolve the claim. "Generally, ineffective assistance of counsel claims are preserved for postconviction to allow trial counsel an opportunity to defend the charge." *State v. Pearson*, 547 N.W.2d 236, 241 (Iowa Ct. App. 1996). In addition, additional testimony is necessary to establish whether the testimony at issue was derivative evidence. We preserve

this claim for postconviction relief proceedings. *See State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006) (preserving claim for postconviction review and stating that "[o]nly in rare cases will the trial record alone be sufficient to resolve the claim on direct appeal").

B.

Majerus claims issue preclusion prevented the State from litigating the existence of the no-contact order and thus his conviction for stalking should be vacated. We review issue preclusion claims for errors at law. *See Emp'r Mut. Cas. Co. v. Van Haaften*, 815 N.W.2d 17, 22 (Iowa 2012).

"The defendant bears the burden to show the existence of the prerequisites for application of [issue preclusion]." *State v. Seager*, 571 N.W.2d 204, 208 (Iowa 1997) (citing *State v. Butler*, 505 N.W.2d 806, 809 (Iowa 1993)). The defendant must prove the following:

> (1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Id.* at 208.

Majerus claims because the State previously failed to prove he violated the no-contact order in a contempt proceeding, he could not be convicted for stalking in violation of the same protective order. We disagree. The issues concluded were not identical. The elements of the offenses are distinct. In contempt proceedings, a defendant must willfully violate the order to be in contempt. *See State v. Lipcamon*, 483 N.W.2d 605, 607 (Iowa 1992) (noting "we have always held that a finding of contempt for a violation of a court order or an

injunction must be willful"). Stalking does not require proof of a willful violation or any violation of the no-contact order; the existence of a no-contact order is the issue. *See State v. Helmers*, 753 N.W.2d 565, 566 (Iowa 2008) (stating "[t]he *existence of a no-contact order* elevates the crime of stalking from an aggravated misdemeanor to a class 'D' felony" (emphasis added)). As we stated in another case:

> When we compare the elements of violation of a protective order and stalking, it is clear the second element of violation of a protective order—that the order was violated—is not an element of the offense of stalking. The class "D" felony offense of stalking merely requires the existence of a protective order. Consequently, we find that violation of a protective order is not a lesser included offense of stalking, and therefore conclude the district court did not err in denying Jose's motion to dismiss on double jeopardy grounds.

*State v. Verdinez*, No. 07-0705, 2008 WL 3916456, at *4 (Iowa Ct. App. Aug. 27, 2008).

In addition, the resolution of the contempt charge had nothing to do with the offense conduct at issue. As noted above, the district court dismissed the contempt charge because the prosecutor failed to introduce into evidence the no-contact order allegedly violated. The necessary issue resolved in the prior contempt proceeding was a limited one related to insufficient proof of the terms and conditions of the no-contact order. That conclusion has no bearing on this matter.

The district court correctly determined Majerus failed to prove issue preclusion applied.

C.

In his next claim of error, Majerus argues a spoliation instruction should have been given to the jury. A spoliation instruction is "a direction to the jury that it could infer from the State's failure to preserve [evidence] that the evidence would have been adverse to the State." *State v. Vincik*, 398 N.W.2d 788, 795 (Iowa 1987). To submit a spoliation instruction there must be substantial evidence that: "(1) the evidence was in existence; (2) the evidence was in the possession of or under control of the party charged with its destruction; (3) the evidence would have been admissible at trial; and (4) the party responsible for its destruction did so intentionally." *State v. Hartsfield*, 681 N.W.2d 626, 630 (Iowa 2004). A refusal to submit a spoliation instruction is reviewed for a correction of errors at law. *See id.* ("Upon considering this question, we think the proper standard of review is for correction of errors of law. As discussed above, the defendant need only generate a jury question on four specific factors in order to meet the requirements for a spoliation inference."); *but see Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016) ("Thus, we clarify today that absent the discretionary component present in [*State v. Langlet*, 283 N.W.2d 330 (Iowa 1979)], we review refusals to give a requested jury instruction for correction of errors at law.").

Majerus argues a spoliation instruction should have been given because Hill did not retain all of the security camera footage from the relevant time period and because Hill disposed of the photos of the broken-out window. We conclude there was not substantial evidence in support of spoliation instruction.

First, the State was never in possession of the evidence at issue. Majerus argues Hill's possession and control are effectively the State's possession and control. This ignores the fundamental truth that a victim "is not a party to the criminal . . . proceeding." *Teggatz v. Ringleb*, 610 N.W.2d 527, 531 (Iowa 2000). The State was the party to the proceeding. Hill was not. The evidence showed Hill was in possession and control of the video footage and the photos, and the State was unaware of their existence. The investigating officer testified once he received the security footage from Hill, he "thought that was it." Even if he suspected Hill withheld some footage, he received the footage sometime on or after November 13, 2015. Because the footage automatically deleted after seven days, the missing footage was deleted in the early morning hours of November 14, 2015, either shortly after Hill sent the officer the two video clips or before Hill ever sent the footage. The investigating officer had little or no opportunity to realize Hill did not send the complete footage and request she send him the missing footage before it automatically deleted. The investigating officer testified he was unaware of any photos taken in Hill's home. The prosecuting attorney also noted she was unaware of any photos until Hill's deposition, when Hill stated she deleted the photos because she assumed someone from the police department had taken photos.

The district court was also under no duty to give the requested instruction because there was no showing the evidence was intentionally destroyed within the meaning of our caselaw. "Ordinarily evidence destroyed under a neutral record destruction policy is not considered intentionally destroyed so as to justify a spoliation instruction." *Hartsfield*, 681 N.W.2d at 632. The State did not

intentionally destroy the security footage. It was automatically deleted or written over by the security system without the officer's knowledge of its deletion. *See State v. Schrock*, No. 13-1832, 2014 WL 5243444, at *2 (Iowa Ct. App. Oct. 15, 2014) (concluding the State did not intentionally destroy security footage when defendant failed to show the State knew the footage existed or knowingly allowed it to be destroyed). Similarly, the State did not know of the existence of the photographs until after Hill disposed of them.

We thus conclude the district court did not err in refusing to give a spoliations instruction to the jury.

D.

Finally, Majerus claims the district court's imposition of a hundred dollar surcharge under Iowa Code section 911.2B constitutes an illegal sentence. An illegal sentence may be challenged at any time. *State v. Bruegger*, 773 N.W.2d 862, 869 (Iowa 2009). Illegal sentences are reviewed for corrections of error at law. *State v. Davis*, 544 N.W.2d 435, 455 (Iowa 1996). "This court reviews constitutional questions de novo." *Bruegger*, 773 N.W.2d at 869 (citing *State v. Brooks*, 760 N.W.2d 197, 204 (Iowa 2009)).

Iowa Code section 911.2B(1) provides:

> In addition to any other surcharge, the court or clerk of the district court shall assess a domestic abuse assault, sexual abuse, stalking, and human trafficking victim surcharge of one hundred dollars if an adjudication of guilt or a deferred judgment has been entered for a violation of section 708.2A, 708.11, or 710A.2, or chapter 709.

Majerus claims section 911.2B should not have been applied to him because it went into effect on July 1, 2015, and the offense conduct was between the fall of

2011 and November 7, 2015, with no jury interrogatory specifying the dates the conduct occurred. *See State v. Lathrop*, 781 N.W.2d 288, 297–98 (Iowa 2010). However, Majerus was also convicted of burglary stemming from conduct occurring in November 2015. It is thus clear the jury believed Majerus was in Hill's home in November 2015, after section 911.2B became effective. Because of this, the verdict "rests on a valid legal basis" and we are not required to "give [Majerus] the benefit of the doubt and assume the verdict is based on the [pre-July 1, 2015 conduct]." *See id.* at 297. The imposition of the surcharge was not illegal.

III.

We affirm Majerus's convictions and the imposition of the surcharge under Iowa Code section 911.2B(1).

**AFFIRMED.**