**IN THE COURT OF APPEALS OF IOWA**

No. 17-0796
Filed April 18, 2018

**DWIGHT LEE MOSER,**
        Petitioner-Appellant,

**vs.**

**ANGELA MARIE BIEHN,**
        Respondent-Appellee.
_____


        Appeal from the Iowa District Court for Warren County, Sherman W. Phipps,

Judge.


        Dwight Moser appeals a district court ruling on his petitions to modify a

custody decree and his application for contempt. **AFFIRMED IN PART AND**

**REVERSED IN PART.**


        Michael P. Holzworth, Des Moines, for appellant.

        Ryan J. Ellis, Nicholas A. Carda, and Tracy A. Eaton of Ellis Law Offices,

P.C., Indianola, for appellee.


        Considered by Doyle, P.J., Tabor, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**SCOTT, Senior Judge.**

Dwight Moser appeals a district court ruling on his petitions to modify a custody decree and his application for contempt. He argues the district court (1) erred in declining to modify the visitation and income-tax-deduction provisions of the decree, (2) abused its discretion in declining to hold the opposing party, Angela Biehn, in contempt for violating the visitation provisions of the decree and the right-of-first-refusal provision of a mediation agreement, and (3) abused its discretion in granting Angela an award of attorney fees. Angela requests an award of appellate attorney fees.

## I.        Background Facts and Proceedings

The parties were never married but are the biological parents of A.M., born in January 2010. In an order establishing paternity, custody, visitation, and support entered in August 2011, the parties were granted joint legal custody, with Angela being awarded physical care. In addition to an alternating holiday-visitation schedule, Dwight was granted visitation every other weekend from Friday at 3:00 p.m. until Monday at 7:00 a.m., every Wednesday from 3:00 p.m. until Thursday at 7:00 a.m., and three weeks out of the summer. The court also ordered the parties to alternate claiming the child each year for state and federal income tax purposes, with Angela claiming the child in even-numbered years and Dwight in odd-numbered years. In resolution of a subsequent contempt action initiated by Dwight, the parties entered into a mediation agreement which contained the following provision:

> The parties further agree that before Angela Biehn uses a daycare
> or babysitter for a three-hour period (this does not include visiting

> relatives), she will first contact Dwight Moser to see if he is available
> to provide care for the minor child . . . .

The district court entered an order directing the parties to comply with the mediation agreement.

In July 2015, Dwight petitioned the court to modify the income-tax-deduction provision of the decree to allow him to claim the child as a tax dependent every year, contending Angela's decrease in income and resulting lack of taxable income amounted to a substantial and material change in circumstances.  In May 2016, Dwight additionally petitioned the court to modify the visitation provisions of the decree, alleging Angela's new employment was interfering with the child's education and arguing such interference and Angela's recent marriage amounted to substantial and material changes in circumstances warranting modification.  Finally, in July 2016, Dwight filed an application for an order to show cause why Angela should not be held in contempt.  Dwight alleged Angela violated the right-of-first-refusal provision of the mediation agreement and additionally denied him six hours of his visitation time on Easter weekend of 2016.

Following a trial, the district court denied the modification petitions, concluding Dwight failed to meet his burden of proof in presenting evidence that would warrant modification of the original decree.[1]  The court also concluded Dwight failed to meet his burden on his allegations of contempt.  The court directed the parties to submit attorney fee affidavits in support of their requests for attorney

---

[1] The parties agreed to modification of the decree to allow Dwight to pick the child up from school on Friday afternoons and return her to school on the subsequent Monday morning on weekends Dwight was entitled to weekend visitation and the child had school on both Friday and Monday.  The court modified the decree to reflect the same.

fees. After its receipt of the same, the court ordered Dwight to pay a portion of Angela's attorney fees in the amount of $18,782.50.

As noted, Dwight appeals. Additional facts will be set forth below as are relevant to the issues raised on appeal.

## II. Standards of Review

Actions to modify a paternity decree are equitable in nature; appellate review of such actions is therefore de novo. *See Nicolou v. Clements*, 516 N.W.2d 905, 905–06 (Iowa Ct. App. 1994); *see also Markey v. Carney*, 705 N.W.2d 13, 19 (Iowa 2005). "We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented." *Nicolou*, 516 N.W.2d at 906. We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g).

Our review of the district court's refusal to hold a party in contempt is for an abuse of discretion. *See In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995). Trial courts have broad discretion in deciding whether to hold a party in contempt, and "unless this discretion is grossly abused, the [trial court's] decision must stand." *Id.* (alteration in original) (quoting *State v. Lipcamon*, 483 N.W.2d 605, 607 (Iowa 1992)).

Finally, "[w]e review the district court's decision to award attorney fees for abuse of discretion." *Christy v. Lenz*, 878 N.W.2d 461, 469 (Iowa Ct. App. 2016). We will reverse an award of attorney fees "only when it rests on grounds that are clearly unreasonable or untenable." *In re Marriage of Erpelding*, ___ N.W.2d ___, ___, 2018 WL 1122305, at *2 (Iowa 2018). "A ruling is clearly unreasonable or untenable when it is 'not supported by substantial evidence or when it is based on

an erroneous application of the law.'" *Id.* (quoting *In re Marriage of Kimbro*, 826 N.W.2d 696, 698–99 (Iowa 2013)).

## III.    Modification

### A.    Income Tax Deduction

Dwight petitioned the court to modify the income-tax-deduction provision of the decree to allow him to claim the parties' child as a tax dependent every year, contending Angela's decrease in income and resulting lack of taxable income amounted to a substantial and material change in circumstances.

The provisions of a "decree dealing with dependency deductions are subject to change since such items are connected directly with the requirements of a noncustodial parent to afford support, child support as such being unquestionably subject to modification." *In re Marriage of Eglseder*, 448 N.W.2d 703, 704 (Iowa Ct. App. 1989). Modification of provisions "having to do with the support of children, or those related to such provisions, can be allowed only if there has been shown a substantial change in circumstances since the entry of the decree." *In re Marriage of Habben*, 260 N.W.2d 401, 403 (Iowa 1977). The party seeking modification must prove the substantial change in circumstances by a preponderance of the evidence. *In re Marriage of Mihm*, 842 N.W.2d 378, 382 (Iowa 2014). Not every change in circumstances is sufficient—it must appear that continued enforcement of the decree would result in a positive wrong or injustice, the circumstantial change must be permanent or continuous rather than temporary, the change in financial conditions must be substantial, and the change must not have been contemplated by the court at the time the original decree was entered. *See In re Marriage of Reitz*, 585 N.W.2d 226, 229 (Iowa 1998).

Dwight's position at trial was that Angela should not be allowed to claim the child as a dependent until she makes at least $25,000.00 per year, as the dependent deduction would not be beneficial to her until she meets that threshold. He further testified his "tax guy and a few other people" informed him that tax benefits do not flow from the dependent deduction until the claimant is earning at least $25,000.00 per year. However, Dwight testified, and additionally indicated in his 2016 child-support-guidelines worksheet, that Angela earned a gross annual income of $18,173.00 while he earned a gross annual income of only $11,000.00. Dwight steadfastly asserted that Angela would get no benefit from the tax deduction but, despite his lesser annual earnings, contended "[t]here could be" a potential benefit to him if he were allowed the deduction every year. He conceded he was not positive he would realize any benefit. Both parties agreed that, in 2014, Angela had no earned income and therefore was not required to file a tax return for that year, but the evidence reveals that Angela completed the necessary paperwork for Dwight to be able to claim the child for that year.

Upon our de novo review, we agree with the district court that Dwight failed to meet his burden for modification. No evidence was presented concerning Angela's earnings situation at the time the original decree was entered. It is therefore impossible to reach any conclusion that her financial condition has changed at all, let alone substantially. Dwight even concedes in his brief on appeal that, since the child's birth, "Angela was either unemployed or temporarily employed." This appears to be an implicit concession that Angela has always had an income comparable to what she had at the time of the modification proceeding, thus negating any potential conclusion that there has been a change of

circumstances in her financial position warranting modification of the income-tax-deduction provision.

In any event, we are unable to conclude that continued enforcement of the provision requiring alternating entitlement to the dependent deduction would result in a positive wrong or injustice. Although Dwight attempts to inflate his income on appeal, his position below was that he made less money per year than Angela—also less than the $25,000.00 threshold he now attempts to impose upon Angela. Angela also completed the necessary paperwork to allow Dwight to claim the child in the only year that it was shown she had no income. We have no reason to believe that Angela would decline to do the same in future years in which she has no income.

We affirm the district court's denial of Dwight's petition to modify the income-tax-deduction provision of the decree.

B.      Visitation

Dwight additionally petitioned the court to modify the visitation provisions of the decree, alleging Angela's new employment was interfering with the child's education and arguing such interference and Angela's recent marriage amounted to substantial and material changes in circumstances warranting modification.

A party seeking modification of a visitation schedule "must establish by a preponderance of evidence that there has been a material change in circumstances since the decree and that the requested change in visitation is in the best interests of the child[]." *Christy*, 878 N.W.2d at 464 (quoting *In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa Ct. App. 1994)).

Dwight simply testified the basis for his petition to modify visitation was that he "want[s] to spend more time with [his] daughter" and his "daughter wants to spend more time with [him]." His general argument on appeal that "[i]t was in the best interests of [the child] to spend more time with her father" is similar. Absolutely no evidence was presented to support Dwight's contentions that Angela's employment, her recent marriage, or any other changes in circumstances have had any effect whatsoever on the child's best interests.

Again, we agree with the district court that Dwight failed to meet his burden for modification. We therefore affirm the denial of Dwight's petition to modify the decree.

## IV. Contempt

No person can be held in contempt unless the allegedly contemptuous acts have been established by proof beyond a reasonable doubt. *Phillips v. Iowa Dist. Ct.*, 380 N.W.2d 706, 709 (Iowa 1986). Contempt is customarily defined as willful disobedience. *See Amro v. Iowa Dist. Ct.*, 429 N.W.2d 135, 140 (Iowa 1988). A finding of willful disobedience

> requires evidence of conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not.

*Id.* (quoting *Lutz v. Darbyshire*, 297 N.W.2d 349, 353 (Iowa 1980), *overruled on other grounds by Phillips*, 380 N.W.2d at 709). A failure to comply is not willful where the order to be followed is indefinite. *See Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007).

A. Denial of Visitation

The decree granted Dwight parenting time on Easter weekend "during even numbered years . . . beginning at 12:00 p.m. the Friday before Easter until Easter day at 5:00 p.m." Dwight testified that, on the Friday before Easter of 2016, Angela picked the child up from school and he was unable to begin his parenting time until 6:00 p.m. because Angela took the child to a "family wedding." Dwight conceded at trial that he was not planning on picking the child up from school until school let out at 3:15 p.m., but asserts on appeal that "Angela denied [his] court-ordered visitation for six hours." Dwight asserts this was a contemptuous act and the district court abused its discretion in declining to hold Angela in contempt for violating the decree.

Text messages between the parties reveal that Angela preemptively asked Dwight if the child could accompany her to the so-called "family wedding" on the day in question. The wedding was, in fact, Angela's wedding, and the child was to be a part of the ceremony. Dwight initially resisted the request, repeatedly asserting "it's my time," but ultimately agreed to allow Angela to exchange the child at 6:00 p.m., noting "we can discuss how we are going to make up the time later." Dwight asserted at trial that his lost parenting time was never made up. However, the text messages between the parties also reveal that Angela allowed Dwight to keep the child until 7:00 a.m. on the Monday morning following Easter Sunday. Under the decree, Dwight would have been required to return the child to Angela by 5:00 p.m. on Easter Sunday, but Angela allowed Dwight to keep the child until the following morning, which amounted to an additional fourteen hours of parenting time for Dwight. There have also been a number of other occasions in which Angela has allowed Dwight additional visitation time.

Based on Angela's request for permission to have the child on the day in question, Dwight's ultimate agreement to the same, and Angela's provision to Dwight of additional visitation time in excess of that which Dwight lost as a result of the child's wedding attendance, it cannot be said that Angela's conduct was "intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not." *Amro*, 429 N.W.2d at 140 (quoting *Lutz*, 297 N.W.2d at 353). Accordingly, we conclude the district court did not abuse its discretion in declining to hold Angela in contempt, as the evidence was insufficient.

B.      Right of First Refusal

As to the right-of-first-refusal provision of the mediation agreement, Dwight testified that on several occasions following Angela's marriage to her new husband, Angela was away from the child for more than three hours but did not contact Dwight to see if he was available to care for the child. Angela conceded these facts. As noted above, the parties entered into a mediation agreement containing the following provision:

> The parties further agree that before Angela Biehn uses a daycare or babysitter for a three-hour period (this does not include visiting relatives), she will first contact Dwight Moser to see if he is available to provide care for the minor child . . . .

Dwight seems to argue on appeal, as he did at trial, that Angela's husband amounts to a babysitter or daycare, rather than a relative, and, therefore, Angela's acts of leaving the child with her husband on these occasions were in violation of the mediation agreement. The district court concluded

> Since the Mediation Agreement does not define the term daycare or babysitter, nor did either party attempt to enter evidence at Trial as to a definition other than opinion, the Court finds the terms as used in the Mediation Agreement are indefinite. As such, Dwight has failed to carry his burden of proof as to any willful disobedience of the Court's Order adopting the Mediation Agreement.

Upon our review, we agree with this assessment and conclude the district court did not abuse its discretion in declining to hold Angela in contempt. We therefore affirm the district court's denial of Dwight's contempt application.

**V.     Attorney Fees**

A.      Trial Attorney Fees

Dwight simply argues "[t]he fees awarded to Angela were not fair and reasonable," as he does not have the reasonable ability to pay the award. Dwight's attorney represented Dwight incurred fees in the amount of $3720.00, only in relation to Angela's counterclaim, which was dismissed by the court. In Angela's attorney fee application, her attorney stated Angela incurred $22,502.50 in attorney fees in relation to defending the modification petitions and the contempt application. The district court offset the parties' respective requests and ordered Dwight to pay Angela attorney fees in the amount of $18,782.50.

"In a proceeding . . . to modify a paternity, custody, or visitation order . . . , the court may award the prevailing party reasonable attorney fees." Iowa Code § 600B.26 (2016). We agree with Dwight that he does not have the reasonable ability to pay an attorney-fee award of $18,782.50 but conclude he does have the reasonable ability to pay a portion of that amount. We reverse the district court's

attorney-fee award and order Dwight to pay Angela $9000.00 in trial attorney fees relating to the modification portions of the proceeding.[2]

B.    Appellate Attorney Fees

Angela requests an award of appellate attorney fees. *See* Iowa Code § 600B.26; *Schaffer v. Frank Moyer Constr. Inc.*, 628 N.W.2d 11, 23 (Iowa 2001) (holding that a statute allowing an award of trial attorney fees permits an award of appellate attorney fees as well). An award of appellate attorney fees is not a matter of right but rests within this court's discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). In determining whether to award attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal. *Id.* We only have the authority to award Angela appellate attorney fees in relation to Dwight's appeal of the district court's modification rulings. We recognize that Dwight has obtained a somewhat favorable appellate ruling on one issue. On the other hand, Dwight's modification

---

[2] We expressly note our award of trial attorney fees is not attributable to the portions of the trial court proceeding relating to contempt. The trial court was, and this court is, without statutory authority to award fees in relation to the contempt portions of the proceeding. *See Myers v. Cosby*, 874 N.W.2d 679, 680–83 (Iowa Ct. App. 2015) (noting "a district court may only tax attorney fees if they are clearly authorized by an agreement or statute" and concluding Iowa Code chapter 600B does not provide for an award of attorney fees in contempt actions); *see also* 2017 Iowa Acts ch. 98, § 2 (enacting a new statute which provides attorney fees in relation to a contempt proceeding under chapter 600B may only be awarded to the party bringing the action, and only if the court makes a finding of contempt against the opposing party); *cf. In re Marriage of Shaman*, No. 14-0410, 2014 WL 7343748, at *2 (Iowa Ct. App. Dec. 14, 2014) (discussing a similar statutory scheme under chapter 598); *In re Marriage of Whiteside*, No. 07-0739, 2007 WL 3376902, at *3 (Iowa Ct. App. Nov. 15, 2007) (same); *In re Marriage of Anderson*, 451 N.W.2d 187, 189–90 (Iowa Ct. App. 1989) (same). Dwight did not raise the statutory-authority argument below and that issue is therefore not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). However, this court is still without statutory authority to enter an award of attorney fees in relation to the contempt proceeding.

petitions were unsupported by evidence and were largely baseless, which is why the district court did not rule in his favor. Dwight appealed, thus requiring Angela to defend against his baseless and unsupported modification claims a second time. In consideration of all the factors, we order Dwight to pay Angela appellate attorney fees in the amount of $3000.00. Costs on appeal are assessed to Dwight.

## VI. Conclusion

We affirm the district court's denial of Dwight's modification petitions and contempt application. We reverse the district court's attorney fee award and order Dwight to pay Angela $9000.00 in trial attorney fees relating to the modification portions of the proceeding. We order Dwight to pay Angela appellate attorney fees in the amount of $3000.00. Costs on appeal are assessed to Dwight.

**AFFIRMED IN PART AND REVERSED IN PART.**