# IN THE COURT OF APPEALS OF IOWA

No. 20-1242
Filed October 6, 2021

IN RE THE MARRIAGE OF MANDY McKEE
AND ROBERT McKEE

Upon the Petition of
MANDY McKEE,
        Petitioner-Appellee,

And Concerning
ROBERT McKEE,
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Pottawattamie County, Greg W.
Steensland, Judge.

        Robert McKee appeals an order modifying physical care and child support
and dismissing contempt claims. **AFFRIMED IN PART; REVERSED IN PART;
AND REMANDED.**

        P. Shawn McCann of McGinn, Springer & Noethe, Council Bluffs, for
appellant.

        Amanda Heims, Council Bluffs, for appellee.

        Considered by Mullins, P.J., and May and Ahlers, JJ.

**MAY, Judge.**

The district court modified the physical care and child support provisions of Robert and Mandy McKee's dissolution decree. The court also dismissed the parties' contempt actions. We affirm in part, reverse in part, and remand for recalculation of child support.

## I. Background Facts

Mandy and Robert were married and had three children. They divorced in 2014. Their decree provided for joint legal custody and joint physical care of all three children. Mandy was ordered to pay Robert $159 per month in child support. She was allowed to claim the oldest and youngest child as dependents on her taxes, while Robert could claim the middle child. Mandy was awarded a 2008 Buick Enclave, but she was ordered to pay off all debts secured by the vehicle.

In 2019, Mandy filed this modification action. She sought physical care and a recalculation of the child support award. Also, each party filed a contempt application against the other: Robert claimed Mandy was not keeping current on the Buick payments, and Mandy claimed Robert failed to reimburse her for childcare expenses.

By the time of trial, the issues had narrowed some. The oldest child had turned eighteen. And both parents agreed Mandy should have physical care of the middle child. So, for the modification action, the only disputed issues were physical care of the youngest child and child support.

After trial, the district court granted physical care of the middle and youngest children to Mandy. The court ordered Robert to pay $925.35 in child support each month. And the court dismissed both contempt applications. Robert appeals.

## II. Scope and Standard of Review

"Petitions to modify the physical care provisions of a divorce decree lie in equity." *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). So we review each issue de novo, including the child support award. *See* Iowa R. App. P. 6.907; *In re Marriage of Robbins*, 510 N.W.2d 844, 845 (Iowa 1994). But we give weight to the fact findings of the trial court, which "is greatly helped in making a wise decision about the parties" by watching and listening to them live. *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (citation omitted); *see also In re Marriage of Rademacher*, No. 11-0798, 2011 WL 5868041, at *3 (Iowa Ct. App. Nov. 23, 2011). We will affirm unless the district court "failed to do substantial equity." *Boatwright v. Lydolph*, No. 18-0532, 2019 WL 719026, at *1 (Iowa Ct. App. Feb. 20, 2019) (citation omitted).

## III. Analysis

On appeal, Robert argues (1) joint physical care remains appropriate for the youngest child, (2) the district court erred in dismissing Robert's contempt complaint against Mandy, and (3) the district court incorrectly calculated the revised child support award. We address each in turn.

### A. Physical Care

A parent who seeks to modify a child's physical care arrangement faces a "heavy burden." *In re Marriage of Kelly*, No. 19-1295, 2020 WL 3571863, at *2 (Iowa Ct. App. July 1, 2020) (citing *In re Marriage of Jacobo*, 526 N.W.2d 859, 864 (Iowa 1995)).

> [T]he applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it

expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

We do not believe Mandy has met her "heavy burden" of demonstrating "the most cogent reasons" to disturb the joint physical care arrangement. *See id.* Mandy has not shown "conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change." *See id.*

Mandy's brief lists six developments that occurred after the decree. Yet all but one of those developments involved *other* children, namely, Mandy and Robert's older children or Robert's stepchildren. And most of the changes do not seem to be "more or less permanent." They mostly seem to involve occasional or one-time events, e.g., sexual contact between the parties' oldest child, who was then seventeen, and a fourteen-year-old stepchild[1]; some marijuana use by a stepchild[2]; an incident in which the oldest child allegedly snuck out of the house;

---

[1] Because of this incident, a no-contact order prohibits the oldest child from living with Robert. Instead, he lives with Mandy.

     The sexual contact will have some permanent consequences, namely, the birth of a child. Robert says he and his new wife will adopt the child. Whether that occurs or not, Mandy does not suggest—and we do not believe—the new baby's birth would require a different physical care arrangement for the youngest child.

[2] We do not minimize the seriousness of illegal drug use in a parent's home. If allowed to persist, it could certainly implicate the youngest child's best interest. We take Robert at his word, however, that this problem has been successfully addressed.

and the oldest child's early departure from high school (he's now pursuing a GED instead).

In any event, Mandy has not shown a substantial connection between those incidents and the youngest child's best interest.[3]  We have considered Mandy's suggestion that—when viewed in the aggregate—the various teenager-related problems at Robert's house show "Robert is failing to provide proper supervision for the children while in his care."  We are not convinced.  For one thing, we recognize that supervising teenagers—especially a seventeen-year-old like the oldest child—is often different from supervising a nine-year-old like the youngest child.  In any event, Mandy has demonstrated no failure by Robert to provide "proper supervision" to the youngest child.

We have considered Mandy's concerns about changes in Robert's daycare arrangements for the youngest child.  When the oldest child lived with Robert, Robert had relied on the oldest child to watch the youngest child.  Now that the oldest child has moved out, Robert has made arrangements for the middle child to care for the youngest child.  This care occurs at Mandy's house, where the middle child resides.  As a result, the youngest child is now spending additional time at Mandy's house.

As with the other changes mentioned by Mandy, we struggle to say this is a "more or less permanent" change in circumstances.  If Mandy objected to the

---

[3] We have not overlooked Mandy's allegation of physical abuse by Robert toward the middle child.  On our de novo review, however, we conclude Mandy's allegation of abuse is unsubstantiated.

youngest child spending additional time in her house, we presume Robert would make other arrangements.

In any event, we do not believe this additional time at Mandy's house—or any of the other developments described by Mandy—show that joint physical care no longer serves the youngest child's best interests. *See Frederici*, 338 N.W.2d at 158 (describing the applicant's burden to "establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed *that the children's best interests make it expedient to make the requested change*." (emphasis added)). The opposite seems true: After living under joint physical care since 2014—about half of the youngest child's life—he is thriving. Mandy describes the youngest child as outgoing; adventurous; loving; "friends with everybody"; spontaneous; fun; someone who "loves to play"; a "typical nine year old"; "average to above average in school"; and a student who "tries really hard" and "gets good grades" with no "behavioral issues." Overall, Mandy says, the youngest child is a "well-adjusted young man." Moreover, although their communication is not perfect, it appears Robert and Mandy are still able to resolve important issues that impact the youngest child's wellbeing. For instance, they recently agreed the child should change from one school to another.

All things considered, we see no substantial change of circumstances that justifies abandoning the current physical care arrangement under which the youngest child has flourished. We reverse the district court's modification of physical care for the youngest child.

**B. Contempt**

The district court dismissed both Robert and Mandy's applications for contempt. Robert appeals, asking us to find Mandy in contempt for failing to adequately reimburse Robert for the 2008 Buick and other expenses.

In Iowa Code chapter 598 (2019) contempt proceedings, "a trial court is not required to hold a party in contempt even though the elements of contempt may exist." *In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995). "[T]he trial court may consider all the circumstances, not just whether a willful violation of a court order has been shown, in deciding whether to impose punishment for contempt in a particular case." *Id.* The trial court has "broad discretion" and we will affirm "unless this discretion is grossly abused." *Id.* (quoting *State v. Lipcamon*, 483 N.W.2d 605, 607 (Iowa 1992)).

Here, the district court concluded Mandy and Robert essentially owed each other the same amount of money. And so the court declined to punish either of them (the court "call[ed] it a wash") because there was "responsibility on the part of both Robert and Mandy for getting into this situation." While the court could have also been justified in taking a different approach, we cannot say the court's decision was an abuse of discretion.[4] So we affirm.

---

[4] We emphasize to Robert and Mandy that this outcome was not guaranteed. If both of them willfully violated court orders, the trial court may well have been justified in punishing both of them. Robert and Mandy should also note that Iowa Code section 598.23(1) authorizes the district court to punish a contemnor by committing them "to the county jail for a period of time not to exceed thirty days for each offense." Robert and Mandy should govern their conduct accordingly.

## C. Child Support Award

Finally, we turn to the child support award. Robert claims the district court erred in determining his gross income. He also points out some other possible errors in the court's calculation.

We start with Robert's gross income. The court must determine the parent's gross income "from the most reliable evidence presented." *In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991). Here, the evidence was quite muddled.[5] For one thing, Robert admitted working side jobs for cash—although Robert was rather vague when testifying about how much income he receives but does not report.

Ultimately, the district court relied on Robert's testimony to conclude he makes thirty-five dollars per hour. Calculating that out at forty hours per week, the district court concluded Robert's gross income was $72,800 per year. Based on our de novo review of the record, with appropriate deference to the trial court that heard the testimony first-hand, we conclude the court's determination was within the range of evidence.[6] So we affirm on this point. *In re Marriage of Rife*, No. 19-

---

[5] A few examples: 2019 tax documents showed a reported income of $33,602. But Robert has also admitted to working for unreported cash in the amount of perhaps $10,000 per year. And he had submitted documents to a lender claiming his income was around $60,000 annually. But when the court asked Robert if he made $60,000 annually, he said "No."

[6] As mentioned above, Robert's testimony was a mixed bag. He clearly admitted making thirty-five dollars per hour. And, at one point in the transcript, it appears Robert admitted to working "40 hours a week," at least "[a]s of now." Later, though, he claimed he did not work forty hours a week because, due to COVID-19, "lately . . . [s]ome people just don't want you in their houses." It appears the district court believed Robert's initial admission was the more reliable basis to determine Robert's "reasonably expected income from all sources." *See* Iowa Ct. R. 9.5(1)(a). We defer to this implicit credibility determination by the judge who actually heard Robert testify.

0679, 2020 WL 1542314, at *4 (Iowa Ct. App. Apr. 1, 2020) (affirming the district court's gross-income determination because it was within the range of evidence).

We turn next to Robert's concerns about other errors in the court's child support calculation. Here we believe Robert has raised valid concerns. As one example, the court's guideline worksheet erroneously states Mandy's income as "untaxed." And the district court's worksheet also assumes Mandy has physical care of the youngest child, which we reverse here. So we remand for further proceedings to recalculate Robert's child support obligation.

### D. Attorney Fees

Both parties seek attorney fees. Robert requests $1500 in fees associated with his contempt action. Because we affirm the district court's refusal to grant relief on Robert's contempt claim, we also decline to award Robert's attorney fees.

Mandy requests $2500 in fees, apparently for this appeal. Appellate attorney fees are awarded upon our discretion and are not a matter of right. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). When considering whether to exercise our discretion, "we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). Upon consideration of these factors, we decline to award Mandy appellate attorney fees.

### IV. Conclusion

We reverse the district court's modification of physical care for the youngest child. We affirm the district court's dismissal of Robert's contempt action. We affirm the district court's determination of Robert's gross income. We remand for

further proceedings to recalculate Robert's child support obligation.  We deny the parties' request for appellate attorney fees.

**AFFRIMED IN PART; REVERSED IN PART; AND REMANDED.**