**Sheral HENLEY, Plaintiff,**

v.

**IOWA DISTRICT COURT FOR EMMET COUNTY, Defendant.**

**No. 94–605.**

Supreme Court of Iowa.

May 24, 1995.

John L. Sandy, Spirit Lake, for plaintiff.

Thomas J. Miller, Atty. Gen., Robert P. Ewald, Asst. Atty. Gen., and Lynn K. Fillenwarth, County Atty., for defendant.

Considered by LARSON, P.J., and LAVORATO, NEUMAN, SNELL, and TERNUS, JJ.

NEUMAN, Justice.

This is an original certiorari action brought by Sheral Henley, a victim of domestic violence. Henley comes before this court, however, not as a victim but as a contemnor charged with aiding and abetting the violation of the very order issued to protect her. She claims the court was without authority to cite or punish her for contempt. We annul the writ.

The record reveals that Henley has suffered vicious abuse at the hands of Raul Medrano, a man with whom she lived in Estherville, Iowa. In August 1993, Medrano was convicted of domestic assault in violation

of Iowa Code section 708.2A(2)(c) (1993). As part of those criminal proceedings, a protective order was issued prohibiting Medrano from having any contact with Henley. *See* Iowa Code § 236.14.[1]

Henley and Medrano continued to see one another with some frequency. Medrano again assaulted Henley in early November 1993, and police charged him with domestic abuse contempt. *See* Iowa Code § 236.8. The State later dismissed this contempt action pursuant to a plea agreement in which Medrano pled guilty to assault.

The incident giving rise to the proceedings before us occurred on February 11, 1994. Around 9 p.m., Estherville police officers observed Medrano's vehicle at Henley's residence. The officers approached the house to investigate, and Henley reluctantly permitted them to come inside. Medrano was eventually discovered under some blankets in the bedroom. Both Henley and Medrano were then arrested for violation of the outstanding no-contact order. They were each taken into custody, and Henley spent one night in the county jail.

Approximately ten days later the State applied for a rule to show cause why Henley should not be held in contempt of the no-contact order. Following hearing, the district court ruled that "Sheral knew about the no-contact order and aided Raul in violating it." It rejected Henley's claim that—as a nonparty to the protective order—she could not be punished for its violation. The court sentenced Henley to seven days in jail, suspended, and placed her on probation for six months.

■ I. Henley challenges the court's action on three grounds.[2] She frames her first argument as an attack on the court's "jurisdiction" to adjudicate her conduct under the facts detailed above. Her argument relies heavily on the procedural protections afforded alleged contemnors under Iowa Code chapter 665 (1993). Citing section 665.7, she urges adherence to the rule that "[b]efore punishing for contempt, unless the offender is already in the presence of the court, the offender must be served personally with a rule to show cause ... and a reasonable time given the offender [to prepare a defense]." From this premise she argues that her summary jailing violated due process, thereby stripping the court of jurisdiction to hold her in contempt.

Henley's argument overlooks the fact that the officers took her into custody under the summary contempt procedures authorized by Iowa's Domestic Abuse Act, chapter 236. The duty of a peace officer under these circumstances is quite plain:

> A peace officer shall use every reasonable means to enforce an order ... in a criminal prosecution arising from a domestic abuse assault.... If a peace officer has probable cause to believe that a person has violated an order or approved consent agreement entered under this chapter ... the peace officer shall take the person into custody and shall take the person without unnecessary delay before the nearest or most accessible magistrate in the judicial district in which the person was taken into custody.

Iowa Code § 236.11. This legislative scheme further directs that a person taken into custody under section 236.11 may be released on bail "only after an initial appearance before a magistrate." Iowa Code § 236.14.

Henley concedes that the summary procedure of section 236.14 is at odds with the procedural requirements of chapter 665. The rule under such circumstances is well settled: Where a general provision—such as chapter 665—conflicts irreconcilably with a special provision—such as the domestic violence contempt rules of chapter 236—the special prevails as an exception to the general. Iowa Code § 4.7; *State v. Perry*, 440 N.W.2d 389, 390 (Iowa 1989).

Section 236.14 plainly authorizes the immediate custodial arrest of a person believed to

---

1. Pertinent to these proceedings, the order provided in part that "the defendant shall not be in the victim's presence except during court appearances."

2. A fourth challenge—to the constitutionality of the search of Henley's home—was not raised in the trial court and, hence, has not been preserved for appellate review. *State v. Tobin*, 333 N.W.2d 842, 844 (Iowa 1983).

have violated a domestic violence protective order. The fact that the detention is accomplished summarily does not mean—as Henley suggests—that the police have adjudicated and punished her for contempt without opportunity for notice or hearing. Her detention was merely the inconvenient byproduct of a system that recognizes that, depending upon accessibility, an appearance before a magistrate may be lawfully delayed up to twenty-four hours. *See* Iowa Code § 804.22; Iowa R.Crim.P. 1(2)(c); *Woodbury County v. City of Sioux City,* 475 N.W.2d 203, 204 n. 3 (Iowa 1991); *Valadez v. City of Des Moines,* 324 N.W.2d 475, 479 (Iowa 1982).

The assignment of error is without merit.

■ II. Henley's second argument is somewhat more compelling. She claims that, as a *victim of domestic violence,* she is entitled to protection under chapter 236, not punishment. In support she cites Iowa Code section 236.8, which authorizes the court to hold "a party" in contempt for violation of a protective order. As a nonparty to the original order against Medrano, Henley claims she is beyond the statute's reach and the court exceeded its authority in punishing her.

The district court rejected Henley's argument and so do we. Our decision is largely controlled by our recent ruling in *Hutcheson v. Iowa District Court,* 480 N.W.2d 260 (Iowa 1992). Like Henley, plaintiff Hutcheson was a domestic violence victim. Also like Henley, Hutcheson was charged with aiding and abetting the violation of a no-contact order issued to his partner. *Id.* at 262. Hutcheson advanced the same argument urged here—that the court was without jurisdiction to hear a contempt charge against one who is not a party to the order. *Id.* at 263. We rejected the claim outright, citing extensive authority from this jurisdiction and others that contempt orders may be enforced against nonparties who act (1) with knowledge of the order, and (2) in concert with the person to whom the court's order is directed. *See id.* at 263–64.

Henley attempts to distinguish *Hutcheson* on the ground Hutcheson was not subjected to the summary arrest and detention of chapter 236. Instead he was cited with a rule to show cause under chapter 665 and afforded

time to mount a defense, albeit unsuccessful. We find the distinction irrelevant. The question is whether the court had subject matter jurisdiction over an action to enforce a domestic violence protective order. The integrity of the court's ruling, as well as the safety and prevention concerns underlying chapter 236, demand swift action. The statute makes no exception for victims who, regrettably, choose to ignore their own best interest. The desires of those individuals must be subordinated to the interest of victims in general, and to the court's ability to demand accountability in this emotionally charged arena. Henley's claim to the contrary must be rejected.

■ III. Henley claims that, even if the court had jurisdiction to entertain a contempt action against her, the evidence tendered was inadequate as a matter of law to sustain the court's ruling.

■ Only willful disobedience of a known court order will justify a conviction for contempt. *Palmer College of Chiropractic v. Iowa Dist. Ct.,* 412 N.W.2d 617, 621 (Iowa 1987); *Lutz v. Darbyshire,* 297 N.W.2d 349, 353 (Iowa 1980). In this context, "willfully" means conduct that is

intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemnor had the right or not.

*Lutz,* 297 N.W.2d at 353. The victim's permission and participation is no defense to a violation of a no-contact order, but such proof may be considered in determining whether a defendant acted willfully. *State v. Lipcamon,* 483 N.W.2d 605, 608 (Iowa 1992). The contempt must be established by proof beyond a reasonable doubt. *Id.* at 606.

The record reveals, through the testimony of police officers, that Henley knew of the no-contact order against Medrano and of its terms. Medrano, too, admitted his familiarity with the order's dictates. Nevertheless, Medrano was discovered by police at Henley's home, in her bed, while the order was in effect. The discovery was made in spite of

Henley's insistence that it was another man, not Medrano, who was with her. Upon her arrest, Henley expressed chagrin at being prevented from being "with the man she loved." Further evidence of her conspiracy with Medrano may be inferred from the lack of proof that Medrano's presence in Henley's home was other than with her knowledge and permission.

■ Based on this evidence, the court could find beyond a reasonable doubt that Henley willfully aided and abetted Medrano's knowing and intentional violation of the no-contact order. Henley argues nevertheless that such a finding violates the spirit of the domestic abuse statute. Decisions in such matters, however, rest in the court's sound discretion and will not be disturbed on appeal absent evidence of gross abuse. *Lipcamon*, 483 N.W.2d at 607. Although we are sympathetic to Henley's plight as a victim, her willful disregard for her own safety cannot deter us from upholding an enforceable order for her protection. We therefore annul the writ.

**WRIT ANNULLED.**