# IN THE COURT OF APPEALS OF IOWA

No. 22-2096
Filed July 3, 2024

JULIE HANSEN SCHLEY,
        Plaintiff-Appellant,

vs.

SIOUX COUNTY, STAN OOSTRA Individually and in his Official Capacity as
Deputy Sheriff for The Sioux County Sheriff's Office, LISA SCHEELE and
GARY SCHLEY, Individually, and as EXECUTOR FOR THE ESTATES of
DONALD SCHLEY and MARGERY SCHLEY,
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Sioux County, Jeffrey A. Neary,

Judge.


        A plaintiff appeals the district court's rulings granting defendants' motions

for summary judgment. **AFFIRMED.**


        Jack Bjornstad of Jack Bjornstad Law Office, Spirit Lake, for appellant.

        Zachary D. Clausen and Douglas L. Phillips of Klass Law Firm, L.L.P., Sioux

City, for appellees Stan Oostra and Sioux County.

        Matthew T.E. Early of Matthew Early Law Office, Spirit Lake, for appellee

Lisa Scheele.

        Darrell J. Isaacson of Isaacson Law, Nora Springs, for appellee Gary

Schley.

Douglas A. Haag of Patterson Law Firm, L.L.P., Des Moines, for appellees Estates of Donald Schley and Margery Schley.

Heard by Badding, P.J., Langholz, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

.

**BADDING, Presiding Judge.**

A "very bitter ugly divorce" between Julie and Gary Schley led to Julie's arrest for violating a no-contact order that prohibited Julie from contacting Gary's girlfriend, Lisa Scheele. After a magistrate dismissed the charge, Julie sued Gary, Lisa, Gary's parents, Sioux County, and Sioux County Deputy Sheriff Stan Oostra, alleging claims for false arrest, malicious prosecution, tortious infliction of emotional distress, tortious interference with contract, civil conspiracy, defamation, negligence, and breach of contract. These claims were dismissed through a series of summary judgment rulings over the four years the lawsuit was pending.

Julie appeals, claiming the district court erred in (1) granting the summary judgment motion filed by Sioux County and Deputy Oostra on her claim for false arrest and (2) determining her claims against the remaining defendants were barred by the "wrongful conduct" rule. We affirm.

## I.      Background Facts and Proceedings

In August 2016, Julie discovered that Gary, her husband of twenty-two years, was having an affair with Lisa. Julie started leaving Lisa angry voicemails and texting her things like, "Did I tell you that my boys know where you live?" Lisa reported these messages to the police in Sioux Center, who told Julie to stop contacting Lisa. But Julie didn't listen, leaving Lisa a voicemail in January 2017 that said, "Listen you fucking bitch, tell Gary he better get his ass home tonight," and calling her three times in April.

The next month, Julie was charged with third-degree harassment, in violation of Iowa Code section 708.7(4) (2017). She pled guilty, and a no-contact order was entered at the end of August. The order prohibited Julie from having

contact with Lisa "in person, by telephone, in writing, or through third parties until further Order of the Court." And it stated in bold type that "a Defendant that violates this Order faces immediate arrest. Violation may occur even if the protected party(ies) consent(s) to prohibited contact."

The day after the no-contact order was entered, Julie commented on a photo posted on social media by one of Lisa's friends. In the photo, Lisa was shown enjoying a vacation with friends in Las Vegas. Julie's comment read, "The bitch in the middle without married boyfriend tonight????"

Lisa reported the message to the police, and Julie was charged in September with the simple misdemeanor crime of violating the no-contact order under Iowa Code section 664A.7(5). A magistrate dismissed the charge, ruling that code section only refers to violations of orders issued for domestic abuse assault or under Iowa Code chapters 232, 335F, 236, 598, or 915.[1] Because Julie's no-contact order was issued under section 708.7(4), the magistrate determined that she could not be charged with a violation of section 664A.7(5).

Julie and Gary's divorce was finalized in November, and all was quiet until January 6, 2018. Gary was living in a house on farmland owned by his parents—Donald and Margery Schley—in rural Sioux County. Julie had a lease agreement with Donald and Margery that allowed her access to the farm for her show horses. She would typically be at the farm at least twice a day to care for her horses. That

---

[1] Iowa Code section 664A.7(5) provides in relevant part that

[v]iolation of a no-contact order entered for the offense or alleged offense of domestic abuse assault in violation of section 708.2A or a violation of a protective order issued pursuant to chapter 232, 235F, 236, 598, or 915 constitutes a public offense and is punishable as a simple misdemeanor.

day, Lisa was at the farm helping Gary paint the inside of the house.  Julie came to the farm around 5:00 p.m. to care for her horses.  Gary and Lisa were inside painting the living room, although Gary said that he "was doing more watching football than painting."  He noticed Julie's vehicle parked outside but didn't say anything to Lisa.

Meanwhile, Lisa went outside to take a break from painting.  While she was outside, Julie drove by on her way out of the property.  Lisa waved at Julie—she said that she did it reflexively, not knowing who was in the vehicle.  But Julie described Lisa's wave as vigorous, like she wanted to get her attention and bait her into contact.  Julie testified in a deposition that she rolled her window down to spit out her gum and, while "cursing a blue streak," yelled "bitch."  She continued down the road out of the farm for about a half mile before pulling over to text Gary messages that said:

> Lol what a fat bitch!
> Geesh.
> btw-does she know that all the harassment stuff was dismissed by the judge?  Haha nothing on my record either…
> So happy for you Gary!  Hope she knows about your money problems 😂

Lisa went inside the house and told Gary that she saw Julie and heard her say, "something bitch."  While Lisa was telling Gary this, his phone went off with the texts from Julie.  Gary showed the messages to Lisa, who decided to call the Sioux County Sheriff's Office because she was worried about "what tomorrow morning would bring involving Julie."  Lisa also said the county attorney's office told her that "if anything else would ever happen, that I was to call and report it."

Dispatch notified Sioux County Deputy Sheriff Stan Oostra about Lisa's report, and he called her back. Lisa told him "that she was out at the farm, that Julie had been out at the farm, and she was concerned that there was going to be issues in violation of a protection order." Deputy Oostra confirmed there was a no-contact order in force and then drove to the farm to talk with Lisa and Gary. Lisa told the deputy that "she had went out to the truck to get something and, when Julie was leaving," Lisa heard "something bitch being said." Gary also showed Deputy Oostra the text messages from Julie. While he was talking to Gary and Lisa, the deputy noticed there were security cameras on the farm. Before leaving, Deputy Oostra got written statements from the couple and asked Gary to work on getting video of the incident from the cameras. Consistent with her verbal report to the deputy, Lisa's written statement said:

> I was on the property & went out to the truck . . . to get some of my belongings. . . . I saw Julie leaving as I was going to the truck & out of habit waved to whoever was driving by & it was her. When she drove away & was turning around, she said ------ <u>Bitch</u>. . . . I didn't hear the 1st part. It's windy. Two minutes after that, she texted a nasty message to Gary who she knows I am dating & have been for some time.

After talking to Lisa and Gary, Deputy Oostra contacted Julie and asked her to come to the sheriff's office to speak to him. She told the deputy "that Lisa had been outside. And when she left, she was standing there waving." Believing he had "probable cause from the statement and from the text message," Deputy Oostra arrested Julie for violating the no-contact order and charged her under section 664A.7(5), unaware that the charge from September 2017 under that section had been dismissed. When Deputy Oostra later reviewed the video from

the security cameras, he saw that Lisa had not gone to the truck but was just standing outside when Julie drove by.

Less than a week after her arrest, Julie was terminated from her position as a middle school principal. She again moved to have the charge under section 664A.7(5) dismissed, which was granted by the magistrate for the same reasons as before. Once the charge was dismissed, Julie filed suit in November 2018 against Gary and Lisa for false arrest, malicious prosecution, tortious infliction of emotional distress, tortious interference with contract, civil conspiracy, and defamation. She also asserted claims for negligence against Gary and his parents, Donald and Margery, plus claims for vicarious liability and breach of contract against just Donald and Margery.[2] And she sued Sioux County and Deputy Oostra, individually and in his official capacity, for false arrest, malicious prosecution, and tortious infliction of emotional distress.[3]

Deputy Oostra and Sioux County moved for summary judgment on the claims against them in November 2019, which the district court granted in March 2020. Gary sought summary judgment the next month, and the court granted his motion on Julie's claims for malicious prosecution and false arrest. The remaining claims were set for trial. After additional discovery, Gary moved for summary judgment again in April 2022, this time under the "wrongful conduct" rule, which prohibits a plaintiff from maintaining a cause of action "based on his [or her]

---

[2] Donald and Margery passed away in 2021, and their estates were substituted as defendants.

[3] Julie included state constitutional claims against Sioux County and Deputy Oostra under *Godfrey v. State*, 898 N.W.2d 844 (Iowa 2017), *overruled by Burnett v. Smith*, 990 N.W.2d 289 (Iowa 2023). The district court dismissed those claims after *Godfrey* was overruled, and Julie does not pursue them on appeal.

own wrong." *Cole v. Taylor*, 301 N.W.2d 766, 768 (Iowa 1981) (citation omitted). Lisa and the estates of Donald and Margery joined in Gary's motion. The court granted the motion in July 2022 and dismissed the rest of Julie's claims against the remaining defendants.[4] Julie appeals these summary judgment rulings.

## II.      Standard of Review

We review a district court's order granting summary judgment for correction of errors at law. *Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 544 (Iowa 2018). Summary judgment is appropriate when the moving party establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "In determining whether a grant of summary judgment was appropriate, we examine the record in the light most favorable to the nonmoving party, drawing all legitimate inferences that may be drawn from the evidence in his or her favor." *Homan v. Branstad*, 887 N.W.2d 153, 163–64 (Iowa 2016). A genuine issue of fact exists if "reasonable minds can differ as to how a factual question should be resolved." *Id.* at 164.

## III.      Analysis

### A.      False Arrest

"The essential elements of the tort of false arrest are (1) detention or restraint against one's will and (2) unlawfulness of the detention or restraint." *Children v. Burton*, 331 N.W.2d 673, 678–79 (Iowa 1983). Once a plaintiff shows

---

[4] The only claim left after this ruling was Lisa's counterclaim against Julie for tortious infliction of emotional distress. In November 2022, Lisa and Julie entered into a settlement agreement that resulted in the dismissal of Lisa's counterclaim and Julie's agreement to not pursue any claims against Lisa on appeal.

there was a warrantless arrest, "the burden of proof shifts to the defendant to show justification for the arrest." *Id.* at 679. "If the officer acts in good faith and with reasonable belief that a crime has been committed and the person arrested committed it, his actions are justified and liability does not attach." *Id.* at 680 (noting that in "civil damage actions for false arrest, courts apply a probable cause standard less demanding than the constitutional probable cause standard in criminal cases"). Relying on that defense from *Children*, the district court found that the "undisputed facts of the case demonstrate that Deputy Oostra acted with a reasonable belief that a crime had been committed, therefore liability cannot attach and so summary judgment is proper."

Julie argues the court erred in finding that Deputy Oostra's actions were justified because her warrantless arrest "violated statutory provisions under chapters 804 and 665 of the Iowa Code." Sioux County and Deputy Oostra contend these provisions are not at issue because "there was a court order requiring the arrest of Plaintiff, and a statute mandating the same."

The order that Sioux County and Deputy Oostra are referring to is the no-contact order entered against Julie after her guilty plea to third-degree harassment in violation of Iowa Code section 708.7(4). That order is subject to the provisions of chapter 664A, which applies "to no-contact orders issued for violations or alleged violations of sections 708.2A, 708.7, 708.11, 709.2, 709.3, and 709.4, and any other public offense for which there is a victim." Iowa Code § 664A.2(1). The no-contact order warned Julie that "a Defendant that violates this Order faces immediate arrest." This warning tracks Iowa Code section 664A.6(1):

If a peace officer has probable cause to believe that a person has violated a no-contact order issued under this chapter, the peace officer shall take the person into custody and shall take the person without unnecessary delay before the nearest or most accessible magistrate in the judicial district in which the person was taken into custody.

Julie argues section 664A.6(1) "must be read in conjunction with section 804.7," which sets out circumstances in which peace officers can make warrantless arrests. So, according to Julie,

the only time a peace officer can lawfully arrest a person based on probable cause for the violation of a no-contact order issued under chapter 664A without a warrant is if the alleged violation is a public offense and meets one of the criteria for warrantless arrests set forth in section 804.7. Otherwise, as required in section 804.7, arrests can only be made in obedience to a warrant.

We disagree.

"The first step in our statutory interpretation analysis is to determine whether the statute is ambiguous." *State v. Middlekauff*, 974 N.W.2d 781, 793 (Iowa 2022) (citation omitted). "Our inquiry ends with the plain language if the statute is unambiguous." *Id.* (citation omitted). Julie does not identify any ambiguity in section 664A.6(1), nor do we find any in its clear directives. *See State v. Finders*, 743 N.W.2d 546, 548 (Iowa 2008) ("A statute is ambiguous if it is capable of being understood in two or more possible ways." (cleaned up)). Instead, her argument invokes the rule of *in pari materia*, which requires related statutes to "be construed together as though they constituted one law." *State v. Peters*, 525 N.W.2d 854, 857 (Iowa 1994) (citation omitted). But we resort to that rule "only in search of legislative intent. It is only a rule of construction to be applied as an aid in determining the meaning of a doubtful statute, and it cannot be invoked where the language of a statute is clear and unambiguous," as it is here. *Id.* at 857–58

(cleaned up); *accord* 2B Norman J. Singer & Shambie Singer, *Statutes & Statutory Construction* § 51:1 (7th ed. 2014) ("Consonant with the basic rule on the use of extrinsic aids, courts do not resort to other statutes if the statute being construed is clear and unambiguous.").

Section 664A.6(1) unambiguously authorizes a peace officer who has probable cause to believe that a person has violated a no-contact order to arrest that person without a warrant. *See Henley v. Iowa Dist. Ct.*, 533 N.W.2d 199, 201–02 (Iowa 1995) (stating section 236.14, which was repealed in 2006 when chapter 664A was enacted, "plainly authorizes the immediate custodial arrest of a person believed to have violated a domestic violence protective order"); 4 Robert R. Rigg, *Iowa Practice Series: Criminal Law* § 33:71 (Oct. 2023 update) (characterizing section 664A.6 as a "mandatory arrest" provision). It's true, as Julie points out, that the statute does not include the phrase "without a warrant." But if we adopted Julie's interpretation, we would be adding requirements to the statute that its text does not support. *See Moulton v. Iowa Emp. Sec. Comm'n*, 34 N.W.2d 211, 216 (Iowa 1948) ("We can neither add words to the statute nor eliminate them.").

Julie alternatively claims that chapter 665, governing contempt proceedings, required Deputy Oostra to obtain a warrant before arresting her because any violation of her no-contact order had to be pursued as a contempt. *See* Iowa Code § 664A.7(1) ("Violation of a no-contact order issued under this chapter . . . is punishable by summary contempt proceedings."). Julie cites section 665.7 in support of this argument, which requires an offender to "be served personally with an order to show cause against the punishment" or "brought before

the court forthwith, or on a given day, by warrant, if necessary." But, as Sioux County and Deputy Oostra point out, the opening phrase of section 665.7 only requires those measures to be taken "[b]efore *punishing* for contempt." *Id.* § 665.7 (emphasis added). They were not required at the time of Julie's detention, as section 664A.6(1) makes clear. *See Henley*, 533 N.W.2d at 202 ("The fact that the detention is accomplished summarily does not mean—as Henley suggests—that the police have adjudicated and punished her for contempt without opportunity for notice or hearing.").

So the question before us is whether, upon viewing the record in the light most favorable to Julie, Deputy Oostra had probable cause under section 664A.6(1) to believe that she violated the no-contact order? The undisputed facts show that he did. Contrary to Julie's arguments otherwise, "[p]robable cause necessary to support warrantless arrest does not demand the same strictness of proof as proof of guilt upon trial." *Children*, 331 N.W.2d at 679 (citation omitted). "Probable cause must be determined on the particular facts in each case" that were "within the officers' knowledge *at the time the arrest is made*." *Id.* at 680 (emphasis in original). "In determining probable cause, all the information in the officer's possession, fair inferences therefrom, and observations made by him, are generally pertinent; and facts may be taken into consideration that would not be admissible on the issue of guilt." *Id.* (citation omitted).

Julie argues that Deputy Oostra "had information, or should have had information had he adequately investigated the matter, that showed Lisa initiating contact with Julie in an attempt to get her in trouble with authorities and then made a false report to Deputy Oostra in order to get her arrested." The "false report,"

according to Julie, was Lisa's statement to the deputy that she "went outside to get some property from a vehicle" and while she "was outside, Julie was driving her vehicle, leaving the property." In his deposition, Deputy Oostra agreed the video from the farm, which was not made part of the summary judgment record, showed Lisa "never went to get any belongings from her truck." Instead, Deputy Oostra testified that "[y]ou can just see her standing. You can see her hand on her head and she is waving as Julie drives by."

No matter what Lisa was doing outside, Julie admitted in her deposition that she was "absolutely furious" when she saw Lisa and "was cursing a blue streak" and "saying bitch, fuck, damn, shit. I was saying everything under the moon." Lisa told Deputy Oostra that she heard Julie say "something bitch." And after watching the video of their interaction at her deposition, Julie testified, "I'm surprised the audio could pick up what I was saying in my truck. But, yes, I used the word bitch." Affording Julie every legitimate inference that can reasonably be deduced from these undisputed facts, we conclude Deputy Oostra had probable cause to believe that Julie violated the no-contact order by yelling "bitch" out her window while Lisa was outside.

Julie seeks to analogize the facts here to those in *Kraft v. City of Bettendorf*, where our supreme court held

> that when a police officer makes a warrantless arrest, for a crime not committed in his presence, on the strength of a single witness'[s] uncorroborated statements and there exist circumstances known to the officer which could cause a reasonable person to doubt the veracity or reliability of the statements, then the credibility of the statements is a pertinent fact relating to the existence of probable cause. It is for the jury to determine whether the witness'[s] uncorroborated accusation would lead to a reasonable belief that the

person accused committed a crime and thus afford probable cause for arrest.

359 N.W.2d 466, 470 (Iowa 1984). But Lisa's statements were not uncorroborated. Before taking Julie into custody, Deputy Oostra interviewed Lisa, Gary, and Julie. He saw the text messages that Julie admitted she sent to Gary right after her encounter with Lisa. Those messages were significant in Deputy Oostra's probable-cause determination: "It just confirmed everything at that moment. At that time, it confirmed everything that Lisa was telling me, when she was leaving the yard, that words were said. And then the text message came via third party."

For these reasons, we affirm the district court's grant of summary judgment on Julie's false arrest claim against Sioux County and Deputy Oostra.

## B. Wrongful Conduct Rule

The remaining defendants sought summary judgment on the rest of Julie's claims against them under what some jurisdictions term the "wrongful conduct" rule. *See* Lauren Rousseau & I. Eric Nordan, *Tug v. Mingo: Let the Plaintiffs Sue— Opioid Addiction, The Wrongful Conduct Rule, and the Culpability Exception*, 34 W. Mich. U. T.M. Cooley L. Rev. 33, 52 (2017) (discussing the rule). This rule provides

> that a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party, or to maintain a claim for damages based on his own wrong or caused by his own neglect, . . . or where he must base his cause of action, in whole or in part, on a violation by himself of the criminal or penal laws.

*Cole*, 301 N.W.2d at 768 (citation omitted) (alteration in original).

In granting summary judgment under this rule, the district court noted that Julie's "remaining claims stem from the [no-contact order] violation incident on

January 6, 2018." Referencing its summary judgment ruling on the false arrest claim against Sioux County and Deputy Oostra, the court found the "facts surrounding Julie's conduct on January 6, 2018 are no longer in dispute to the extent that reasonable minds could differ." The court reasoned that "[j]ust because a criminal conviction did not ultimately result . . . does not mean that the conduct . . . did not take place and that it did not, in fact, violate" the order. The court concluded:

> To allow a party, even one not criminally convicted for their wrongdoing, to sue and collect damages stemming from the consequences of their wrongful actions would blatantly send the wrong message, especially if those lawsuits were directed at and sought damages from the victims of the wrongful conduct.

Julie argues the court erred in reaching this conclusion because "she did not violate the no-contact order and . . . Lisa made a false accusation to Deputy Oostra which resulted in her arrest." But the undisputed facts discussed in the preceding section show that regardless of why Lisa was outside the house, Julie violated the no-contact order by yelling "bitch" at her. We agree with the court that, to establish her claims, Julie must rely on that wrongful conduct. *See Anderson v. Miller*, 559 N.W.2d 29, 33–34 (Iowa 1997) (applying the wrongful conduct rule to bar plaintiff's claim against a defendant for negligently entrusting a vehicle to the plaintiff's intoxicated decedent); *Tate v. Derifield*, 510 N.W.2d 885, 888 (Iowa 1994) (concluding "it would be wrong as a matter of public policy to allow recovery on a consortium claim which arose from the lawful incarceration of a spouse"); *Veverka v. Cash*, 318 N.W.2d 447, 451 (Iowa 1982) (concluding wrongful conduct rule barred convicted murderer's civil action against his former psychiatrist); *Cole*, 301 N.W.2d at 768 (finding a patient could not recover in tort

from her psychiatrist on a claim that he negligently failed to prevent her from committing murder because "[i]t is that very criminal act which she claims as her damages"); *Pappas v. Clark*, 494 N.W.2d 245, 247–48 (Iowa Ct. App. 1992) (barring wife of decedent whose illegal drug addiction resulted in his death from maintaining an action against his doctor, pharmacist, and pharmacies).

Julie does not contest this point on appeal. Instead, she contends application of the wrongful conduct rule is "directly contrary to" our supreme court's decision in *Hoyt v. Gutterz Bowl & Lounge, L.L.C.*, in which a plaintiff sued a bar for negligence after the plaintiff was assaulted outside the bar by a patron he insulted earlier in the evening. 829 N.W.2d 772, 773 (Iowa 2013). Because the court in *Hoyt* "held that an individual who actually instigated a fight could still maintain a cause of action," Julie argues "then certainly the claims made by [her] should be submitted to a jury." She makes a similar argument under *Mulhern v. Cath. Health Initiatives*, 799 N.W.2d 104, 106 (Iowa 2011), in which the court concluded that our state's comparative fault act "permits a jury to compare the fault of a noncustodial suicide victim with the negligence of the mental health professionals treating her." We disagree for two reasons.

First, the wrongful conduct rule was not at issue in *Hoyt* or *Mulhern*—or even mentioned by the court in those cases. Second, to the extent that Julie's argument implicates comparative fault principles, we rejected a similar argument in *Pappas*:

> At the outset a distinction must be drawn between lawful activities regulated by statute and activities which are entirely prohibited by law. In the first instance, it is familiar law that a violation of a statute governing the manner in which activities should be conducted, would merely constitute negligence or contributory negligence. . . . Such

cases would today be resolved under the rule of comparative negligence. . . . However, when the plaintiff has engaged in activities prohibited, as opposed to merely regulated, by law, the courts will not entertain the suit if the plaintiff's conduct constituted a serious violation of the law and the injuries for which he seeks recovery were the direct result of that violation. In this latter instance recovery is denied, not because the plaintiff contributed to his injury, but because the public policy of this State generally denies judicial relief to those injured in the course of committing a serious criminal act.

494 N.W.2d at 247–48 (quoting *Barker v. Kallash*, 468 N.E.2d 39, 41 (N.Y. Ct. App. 1984)) (alterations in original); *cf. Tug Valley Pharmacy, LLC v. All Plaintiffs Below in Mingo Cnty.*, 773 S.E.2d 627, 635 (W. Va. 2015) (concluding that "a plaintiff's immoral or wrongful conduct does not serve as a common law bar" to recovery for damages from another's tort and must instead be assessed under comparative fault principles). Nothing the court said in *Hoyt* or *Mulhern* changes that analysis.

As a result, we affirm the district court's entry of summary judgment on Julie's remaining claims against the rest of the defendants.[5]

**AFFIRMED.**

---

[5] In doing so, we note the court's dismissal under the wrongful conduct rule included Julie's breach-of-contract claim against the estates of Donald and Margery. While Iowa has only applied the rule to tort claims, Julie does not contend on appeal that its application to the contract claim was improper. *Cf. Howell v. Normal Life of RI-005 Georgia, Inc.*, 788 S.E.2d 840, 843 (Ga. Ct. App. 2016) (Barnes, J., specially concurring) (noting the wrongful conduct rule "has been applied in both tort and breach-of-contract cases"). So we consider that issue waived. *See* Iowa R. App. P. 6.903(2)(a)(8)(3).